# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

|  |  |
|---|---|
| NATIVE AMERICAN GUARDIAN'S ASSOCIATION, | Civil Action No. 23-cv-00186-PDW-ARS |
| Plaintiff, | |
| v. | |
| WASHINGTON COMMANDERS, JOSH HARRIS, MATTHEW LAUX, and THE NATIONAL CONGRESS OF AMERICAN INDIANS, | |
| Defendants. | |

---

**DEFENDANT MATTHEW LAUX'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM**

---

Of Counsel and On the Brief:
    Cameron A. Welch
    Elizabeth A. Carbone

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

LEGAL ARGUMENT............................................................................................. 6

I.      A DISMISSAL OF THE COMPLAINT AS TO MR. LAUX IS WARRANTED UNDER RULE 12(b)(2). ............................................. 6

      A.     This Court Cannot Exercise Jurisdiction Over Mr. Laux. ......................... 7

            1.     Neither General Jurisdiction Nor Specific Jurisdiction Exists Over Mr. Laux……………………………10

            2.     Even The *Calder* Effects Test Does Not Provide A Basis For Jurisdiction……………………………………13

II.     ALTERNATIVELY, A DISMISSAL OF THE COMPLAINT AS TO MR. LAUX IS WARRANTED UNDER RULE 12(b)(6). .......................................... 16

      A.     Plaintiff Has Not, And Cannot State, A Cognizable Defamation Claim Against Mr. Laux. .......................................................................... 18

            1.     Mr. Laux's Subjective Statement Is Not Defamatory As A Matter Of Law……………………………………19

            2.     As A Final Matter, Plaintiff Failed To Plead Malice, A Required Element Of Its Defamation Claims…………………23

CONCLUSION..................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                          **Page(s)**

*Adams v. Riverview Healthcare Ass'n.*,
   No. 02-cv-135, 2003 WL 1456442 (D.N.D. Mar. 17, 2003) ...................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................21, 22, 29

*Ayyadurai v. Floor64, Inc.*,
   270 F. Supp. 3d 343 (D. Mass. 2017) .....................................................................................28

*Bigfoot on the Strip, LLC v. Winchester*,
   No. 18-cv-3155, 2019 WL 4144320 (W.D. Mo. Aug. 30, 2019) ............................................27

*Boyko v. Robinson*,
   321 F. App'x 526 (8th Cir. 2009) ...........................................................................................20

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
   582 U.S. 255 (2017) ................................................................................................................16

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
   42 F.4th 948 (8th Cir. 2022) .......................................................................................16, 19, 20

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................................13

*Calder v. Jones*,
   465 U.S. 783 (1984) ..................................................................................................... *passim*

*Chambers v. Travelers Cos.*,
   668 F.3d 559 (8th Cir. 2012) ..................................................................................................28

*Dever v. Hentzen Coatings, Inc.*,
   380 F.3d 1070 (8th Cir. 2004) ...................................................................................... *passim*

*Dilworth v. Dudley*,
   75 F.3d 307 (7th Cir. 1996) ....................................................................................................26

*Escobar, Inc. v. Barwest Grp., LLC*,
   No. 20-cv-2771, 2021 WL 4319572 (D. Colo. Sept. 22, 2021) ..............................................17

*Fairbanks v. Roller*,
   314 F. Supp. 3d 85 (D.D.C. 2018) ..........................................................................................22

*Fastpath, Inc. v. Arbela Tech. Corp.*,
   760 F.3d 816 (8th Cir. 2014) ..................................................................................................11

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ............................................................................14, 15

*Frazier v. Eagle Air Med Corp.*,
    No. 21-cv-136, 2022 WL 1303070 (D.N.D. May 2, 2022) ............................6, 7, 8, 11, 13, 15

*Gray v. St. Martin Press. Inc.*,
    221 F.3d 243 (1st Cir. 2000) ...................................................................26

*Greenbelt Co-op. Publishing Ass'n v. Bresler*,
    398 U.S. 6 (1970) .....................................................................................29

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ...................................................................................17

*Hitachi Credit Am. Corp. v. Tulsa Telecom & Utilities LLC*,
    No. 09-cv-56, 2014 WL 585432 (N.D. Okla. Feb. 13, 2014) ..................17

*Horsley v. Rivera*,
    292 F.3d 695 (11th Cir. 2002) .................................................................25

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ...................................................................19

*Johnson v. Woodcock*,
    444 F.3d 953 (8th Cir. 2006) ...................................................................14

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
    648 F.3d 588 (8th Cir. 2011) ...................................................................18

*Kahl v. Bureau of Nat'l Affs., Inc.*,
    856 F.3d 106 (D.C. Cir. 2017) .................................................................22

*Kangas v. Kieffer*,
    495 Fed. App'x 749 (8th Cir. 2012) .........................................................16

*Kraft v. Essentia Health, Innovis Health, LLC*,
    600 F. Supp. 3d 965 (D.N.D. 2021) .........................................................21

*Lauderback v. Am. Broad. Cos.*,
    741 F.2d 193 (8th Cir. 1984) ...............................................................26, 28

*McCurdy v. Hughes*,
    248 N.W. 512 (1933) ...............................................................................20

*Meier v. Novak*,
    338 N.W.2d 631 (N.D. 1983) ...................................................................28

iii

*Milkovich v. Lorain J. Co.*,
  497 U.S. 1 (1990)........................................................................................25, 26

*Morningside Church, Inc. v. Rutledge*,
  9 F.4th 615 (8th Cir. 2021) ........................................................................19, 21

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)..........................................................................................26

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
  951 F.3d 952 (8th Cir. 2020) ...........................................................................23

*Nuevos Destinos, LLC v. Peck*,
  No. 19-cv-45, 2019 WL 6481441 (D.N.D. Dec. 2, 2019), *aff'd*, 999 F.3d 641
  (8th Cir. 2021)...............................................................................11, 14, 16, 17

*Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*,
  829 F.3d 576 (8th Cir. 2016) ...........................................................................25

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
  953 F.2d 724 (1st Cir. 1992)............................................................................26

*Riemers v. Mahar*,
  748 N.W.2d 714 (N.D. 2008) ..............................................................23, 24, 29

*Romantix-Fargo, Inc. v. City of Fargo*,
  No. 22-cv-183, 2023 WL 5000345 (D.N.D. Aug. 4, 2023).............................21, 22

*Schmitt v. MeritCare Health Sys.*,
  834 N.W.2d 627 (N.D. 2013) ..........................................................................25, 27

*Spencer v. Pocono Int'l Raceway, Inc.*,
  No. 12-cv-1050, 2012 WL 2050168 (M.D. Pa. June 6, 2012) ..............................17

*Stoltz v. Cnty of Lancaster*,
  No. 08-cv-5622, 2011 WL 815709 (E.D. Penn. Mar. 7, 2011) ............................26

*Turkish Coalition of Am., Inc. v. Bruininks*,
  678 F.3d 617 (8th Cir. 2012) ...........................................................................24

*Walden v. Fiore*,
  571 U.S. 277 (2014)..........................................................................................18

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)..........................................................................................14

## Statutes

28 U.S.C. § 1332(c)(1)...........................................................................................17

Fed. R. Civ. P. 4(k)(1)(A) ......................................................................7

Fed. R. Civ. P. 12(b)(2).............................................................6, 11, 21

Fed. R. Civ. P. 12(b)(6).............................................................6, 21, 22

N.D.C.C. § 14-02-02 ...........................................................................24

N.D.C.C. § 14-02-03 ...........................................................................23

N.D.C.C § 14-02-04.......................................................................23, 24

N.D. R. Civ. P. 4(b)(2).........................................................................12

Defendant, Matthew Laux ("*Mr. Laux*"), respectfully submits this brief in support of his motion to dismiss plaintiff, Native American Guardian's Association's ("*Plaintiff*") September 25, 2023 complaint (the "*Complaint*") [Dkt. No. 1] for a lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, for failure to state a claim against him pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This Court lacks personal jurisdiction over Mr. Laux.  The entire case against him is predicated on a single comment in a text message Mr. Laux, a resident of Maryland with no contacts with North Dakota, sent to a single individual, non-party Ms. Christina King ("*Ms. King*"), in the greater District of Columbia/Maryland/Virginia area (commonly referred to as the "*DMV*" area).  The text message was part of a conversation about season tickets for a suite at FedEx Field, which is located in Maryland, that morphed into an extension of the ongoing public debate over the "Redskins" name.  Whether they are called the Commanders, the Redskins, or anything else, it is undisputed the Washington professional football team is not a resident of North Dakota.  Neither is Plaintiff, which erroneously claims to have been defamed.  Plaintiff was formed and exists under the laws of the Commonwealth of Virginia.  Not North Dakota.  Plaintiff merely registered its trade name in North Dakota in 2015 (which registration became inactive in 2017).  Although Plaintiff contends it maintains an address in North Dakota, a P.O. Box is not a "corporate nerve center."  Thus, Plaintiff also does not (contrary to its allegations) maintain a principal place of business in North Dakota.  The fact that a corporate officer of Plaintiff purportedly resides in North Dakota is not enough.  Plaintiff is a nonresident corporation, not a citizen of North Dakota. In sum, there is no nexus between the claim against Mr. Laux and this jurisdiction.

But it is Mr. Laux's contacts with this State that are paramount in assessing personal jurisdiction.  And there are none.  Mr. Laux has never resided, solicited business in, or worked in

North Dakota.  He maintains no real or personal property in North Dakota.  The alleged intentional

tort at issue here (e.g., defamation) purportedly occurred in the DMV area and was published to a

single DMV resident.   To describe Mr. Laux's contacts with North Dakota as "isolated,"

"sporadic," and "fortuitous" would even be an exaggeration.  Other than a single trip to the State

as a teenager for a high school wrestling tournament, there simply are no contacts.  Thus, Mr.

Laux's contact with this State is so attenuated that this Court cannot constitutionally exercise

personal jurisdiction over him consistent with the Constitution's Due Process Clause under any

jurisdictional theory: general jurisdiction, specific jurisdiction, or jurisdiction pursuant to *Calder

v. Jones*, 465 U.S. 783 (1984).  The Complaint as to Mr. Laux should be dismissed on this basis

alone.

Yet, even if this Court could exercise personal jurisdiction over Mr. Laux, the claim against

him remains ripe for dismissal on substantive grounds.  The alleged defamatory statement, in its

entirety, is as follows: "[y]ou understand the people that started this petition is a fake group right?"

This statement was made in response to Ms. King's invocation of the "viral" Internet petition

Plaintiff, voluntarily inserting itself into the public debate as a limited public figure, adopted

demanding reinstatement of the "Redskins" name.

But calling a corporation a "fake group" is not, as a matter of law, defamatory.  Contrary

to Plaintiff's numerous attempts to recast and rewrite the statement through varying manufactured

interpretations interspersed throughout the Complaint (which are unsupported by the record or any

factual allegations), Mr. Laux's comment that Plaintiff is a "fake group" is a subjective statement

of opinion relating to a public debate that neither implies the existence of undisclosed facts nor is

capable of being proven true or false.  It is vague, hyperbolic rhetoric capable of any number of

interpretations.  In short, it is not a false statement of fact.  To characterize such a statement as

defamatory is a particular overreach where, as here: (i) Plaintiff's allegations of harm allegedly resulting from this statement consist of conclusory statements taken verbatim from North Dakota's defamation statutes; and (ii) Plaintiff does not and cannot plead actual malice, which is required in light of Plaintiff's status as a limited public figure.

In sum, Plaintiff filed its lawsuit in a forum that lacks jurisdiction predicated on a statement that is not defamatory as a matter of law.  For these reasons, the Court should dismiss this action against Mr. Laux.

**STATEMENT OF FACTS**

Mr. Laux incorporates by reference herein: (i) the allegations set forth in the Complaint;[1] (ii) the Declaration of Defendant Matthew Laux dated December 27, 2023 ("_Laux Decl._") (filed herewith); (iii) the Declaration of Thomas L. Murphy dated November 30, 2023 ("_Murphy Decl._") [Dkt. No. 23], with exhibits; and (iv) any further declarations or papers filed by the Commanders in this action that pertain to the issues in this motion.

_**The Parties**_

Plaintiff is a "nonstock" corporation that was incorporated in Virginia on April 6, 2017. _See_ Murphy Decl. at ¶¶ 4-5 & Ex. 2 [Dkt. No. 23-2].  As Plaintiff recently represented to another court, it "is a section 501(c)(3) non-profit organization organized under the laws of the State of Virginia…."  Murphy Decl., Ex. 3 [Dkt. No. 23-3] at ¶ 34.  Its alleged  _de minimis_  connections to North Dakota are three-fold: (1) the registration of a trade name in this State in 2015 (which has since become inactive); (2) a P.O. Box; and (3) its President's residence.  _See_ Murphy Decl. at ¶ 2 & Ex. 1 [Dkt. No. 23-1] (trade name registration); _see also_ Compl. at ¶ 1 (referring to its P.O. Box

---

[1] To the extent that allegations are expressly reiterated from the Complaint, those allegations are assumed true only if they comprise well-pled factual allegations and for the purposes of this motion only.

and President's domicile).  Plaintiff's alleged "organizational mission" is to "further cultural and ethnic awareness" and "bravely defend[]" Native American history.  *See* Compl. at p. 2 (Plaintiff "bravely defends [Native American] history") & ¶ 1 (alleging an organizational mission).

Mr. Laux is a citizen of Maryland.  *See* Laux Decl. at ¶ 2.  Mr. Laux has never maintained any residence in North Dakota or worked in North Dakota.  *Id.* at ¶¶ 2 & 5.  In fact, he traveled to North Dakota only once for a wrestling tournament when he was in high school.  *Id.* at ¶ 2.  He is not registered to vote in North Dakota, does not pay taxes to North Dakota, and does not maintain a North Dakota mailing address or phone number.  *Id.* at ¶ 3.  Nor does Mr. Laux own any real or personal property in North Dakota or knowingly contract with any person or entity in the State. *Id.* at ¶ 4.  Mr. Laux is likewise not a partner, member, or shareholder of any company that maintains a place of business in North Dakota and/or is incorporated in North Dakota.  *Id.* at ¶ 4.

Mr. Laux is currently employed by the Commanders and works in the Commanders' Maryland offices.  Laux Decl. at ¶ 5.  Upon information and belief, the Commanders is not an organized entity; rather, it is a *d/b/a* for Pro-Football LLC, which is organized under the laws of Maryland and has its principal place of business in Ashburn, Virginia.  *See* Declaration of Amina Bulman ("*Bulman Decl.*"), ¶ 8.  In the course of Mr. Laux's employment, Mr. Laux has never knowingly contacted, or attempted to contact, any person residing in, or company located in, North Dakota, or otherwise solicited business from any person or company located or residing in North Dakota.  Laux Decl. at ¶ 5.

### ***The Instant Lawsuit***

Notwithstanding the apparent lack of connection between Mr. Laux and this State, on September 25, 2023, Plaintiff commenced the pending action against Mr. Laux and other

defendants.[2]  *See generally* Compl.  Plaintiff asserts a single defamation claim against Mr. Laux. *See, e.g.*, *id.* at ¶¶ 83-96.  Plaintiff's defamation claim is based on a text message exchange between Mr. Laux and Ms. King concerning the purchase of a suite at FedEx Field in Maryland from the Commanders and that involved a matter of alleged "public discourse" – the Commanders' former "Redskins" moniker.  *See* Compl. at ¶¶ 30-38 (referring to the public discourse over the name change), ¶¶ 48-52 (alleging the text message communication involved Ms. King's opinion on the Commanders' name) & ¶ 66 ("Mr. Laux even agreed he liked the Redskins name.").  Specifically, Plaintiff contends that while Mr. Laux was attempting to "convince Ms. King to purchase box seats[,]" Ms. King told Mr. Laux about her boycotting the Commanders and Plaintiff's "viral" petition demanding that the Commanders change their team name back to the "Redskins."  *Id.* at ¶¶ 47-52.  Mr. Laux allegedly responded that "[y]ou understand the people that started this petition is a fake group right?"  *Id.* at ¶ 51.

At all relevant times during this conversation, Mr. Laux believed that Ms. King was located and residing in the DMV area.  Laux Decl. at ¶ 6.  Plaintiff does not contend anything contrary. *See generally* Compl.  Ms. King's family's business (which was the former owner of a luxury box at FedEx Field) maintains its place of business in DMV.  *Id.*  The text message exchange was part of a solicitation for Ms. King and her family to renew their season tickets at FedEx Field in Maryland.  *Id.*; *see also* Compl. at ¶¶ 47-48 & 52.  No allegation is made that Mr. Laux knew: (i) of Ms. Eunice Davidson or her location; (ii) the location of Plaintiff's "headquarters" or members; (iii) of any connection between Ms. King and Plaintiff; (iv) that Mr. Laux intended to direct his private communication to Ms. King to Plaintiff; or (v) that he provided the text message to Fox

---

[2] These "other Defendants" include the Commanders and defendants Josh Harris ("*Mr. Harris*" and, together with the Commanders, the "*Commander Defendants*") and The National Congress of American Indians ("*NCAI*").

News for further publication.  *See generally* Compl.  Mr. Laux did not in fact know Ms. King had

any connection to Plaintiff and/or that Plaintiff had any alleged connection to North Dakota.  Laux

Decl. at ¶ 6.  Nonetheless, Plaintiff claims the singular statement was false and racist, (Compl. at

¶¶ 56-57), subsequently provided to Fox News by "a source" and republished, (*id.* at ¶ 53), and

allegedly caused Plaintiff's members (not identified in the Complaint) to be "shunned and

avoided" by members of the general public, among other allegations.  *Id.* at ¶ 89.

Mr. Laux now moves this Court for dismissal of the claim against him.  For the reasons set

forth below, the Complaint should be dismissed in its entirety as to Mr. Laux on either personal

jurisdiction or pleading grounds.

## LEGAL ARGUMENT

## I.     A DISMISSAL OF THE COMPLAINT AS TO MR. LAUX IS WARRANTED UNDER RULE 12(b)(2).

It is beyond cavil that "[a] federal court in a diversity action may assume jurisdiction over

nonresident defendants only to the extent permitted by the long-arm statute of the forum state and

by the Due Process Clause." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)

(citation and quotations omitted).  If a defendant challenges jurisdiction through a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(2), then "the plaintiff bears the burden to

show that jurisdiction exists." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir.

2014) (citations omitted).  The burden of proving that the court has *in personam* jurisdiction over

a nonresident defendant is, and remains, on the party seeking to establish it (e.g., the plaintiff).  To

defeat such a challenge, a plaintiff must make at least "a *prima facie* showing of personal

jurisdiction over" the nonresident defendant.  *Frazier v. Eagle Air Med Corp.*, No. 21-cv-136,

2022 WL 1303070, at *2 (D.N.D. May 2, 2022) (Welte, J.) (citation omitted); *Nuevos Destinos,*

*LLC v. Peck*, No. 19-cv-45, 2019 WL 6481441, at *7 (D.N.D. Dec. 2, 2019) (Welte, J.) (citation

omitted), *aff'd*, 999 F.3d 641 (8th Cir. 2021).  As this Court recognizes, "[t]hat *prima facie* showing is analyzed 'not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto.'"  *Frazier*, 2022 WL 1303070 at *2 (citing *Dever*, 380 F.3d at 1072).

Plaintiff cannot make the required showing here.  As is clear from the pleadings, declarations, and exhibits presented in connection with this motion, as well as the motions filed by the Commanders and the NCAI, it cannot be legitimately disputed that Mr. Laux's connection to North Dakota is, at best, sporadic and fortuitous rather than constitutionally significant.

A.      **This Court Cannot Exercise Jurisdiction Over Mr. Laux.**

In order for a court to properly exercise personal jurisdiction over a nonresident defendant, the nonresident "must be 'amenable to service of process under the appropriate long arm statute[,]'[3]" and must have "engaged in activities which satisfy the minimum contacts requirement of the Due Process Clause."  *See, e.g.*, *Frazier*, 2022 WL 1303070 at *2 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  North Dakota's long-arm statute generally permits the exercise of personal jurisdiction over a nonresident defendant to the extent it "does not offend against traditional notions of justice or fair play or the due process of law, under…" certain enumerated "circumstances[.]"[4]  N.D. R. Civ. P. 4(b)(2).  Courts have interpreted this statute as permitting the exercise of personal "jurisdiction over a nonresident defendants to the fullest extent

---

[3] A federal court can exercise personal jurisdiction over nonresident defendants to the same extent as a court of general jurisdiction in the state where the federal district court is located.  *See, e.g.*, Fed. R. Civ. P. 4(k)(1)(A).

[4] Plaintiff appears to contend that the circumstance that applies here is "committing a tort within or outside this state causing injury to another person or property within this state[.]"  N.D. R. Civ. P. 4(b)(2)(C).

permitted by due process." *Frazier*, 2022 WL 1303070 at *2 (citing *Hansen v. Scott*, 645 N.W.2d 223, 230 (N.D. 2002)).   Accordingly, the two-step jurisdictional inquiry in North Dakota is collapsed into one overarching question: whether the exercise of personal jurisdiction "is consistent with the Due Process Clause of the Constitution." *Adams v. Riverview Healthcare Ass'n.*, No. 02-cv-135, 2003 WL 1456442, at *1 (D.N.D. Mar. 17, 2003) ("It is well established that North Dakota's long-arm statute extends jurisdiction to the full extent permitted by the due process clause.   Therefore, this Court need only determine whether jurisdiction over [the defendant] is consistent with the Due Process Clause of the Constitution." (internal citation omitted)).

Due process is satisfied when there are a sufficient "minimum contacts between [a] non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Dever*, 380 F.3d at 1073 (citations and quotations omitted) (alteration in original).   A defendant's contact with the state must be such that the nonresident defendant can be said to "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation and quotations omitted); *Dever*, 380 F.3d at 1073 (the minimum contacts analysis "require[s] 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws[]'") (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Jurisdiction is generally premised on either the concept of general or specific jurisdiction. A court can exercise general jurisdiction over a nonresident defendant in any action if the nonresident defendant's contacts with the state are "continuous and systematic[.]" *Dever*, 380 F.3d at 1073 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16

(1984)).  "[S]pecific jurisdiction exists when the suit 'arises out of or relates to the defendant's contacts with the forum.'"  *Nuevos Destinos, LLC*, 2019 WL 6481441 at *7 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2011)); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims.  The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" (citation omitted)).

Under either jurisdictional concept, a nonresident "defendant's contacts with the forum state must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co.*, 326 U.S. at 316).  To assess same, a nonresident defendant's minimum contacts with a forum state are measured in North Dakota using a five-factor test (hereinafter, the "*Dever* Factors"): "(1) the nature and quality of a [nonresident] defendant's contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."  *Nuevos Destinos, LLC*, 2019 WL 6481441 at *8 (citing *Dever*, 380 F.3d at 1073-74).  The requisite "contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."  *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) (citation and quotations omitted).  On balance, these factors must weigh in favor of a finding that there is a "substantial connection" between the nonresident defendant and the forum state.  *See, e.g.*, *Johnson*, 444 F.3d at 956 (citation and quotations omitted).

Mr. Laux had no fair warning that he could be subject to a lawsuit in North Dakota and certainly did not deliberately or consciously establish any contacts here.

9

1.    **Neither General Jurisdiction Nor Specific
Jurisdiction Exists Over Mr. Laux.**

Stated simply, Mr. Laux has no meaningful connection to North Dakota.  First, there can

be no legitimate dispute that North Dakota lacks general jurisdiction over Mr. Laux.  General

jurisdiction exists over an individual only in the state in which he is a citizen.  *See, e.g.*, *Ford

Motor Co.*, 141 S. Ct. at 1024 ("In what we have called the 'paradigm' case, an individual is subject

to general jurisdiction in her place of domicile." (citation omitted)).  Mr. Laux is a citizen of

Maryland.  Laux Decl. at ¶ 2.  He maintains no real or personal property in North Dakota.  *See id.*

at ¶ 4.  He is not at home (literally or figuratively) in this State.  Accordingly, there is no cognizable

basis for the exercise of general jurisdiction over Mr. Laux.[5]

Nor is there specific jurisdiction.  The nature, quality, and quantity of Mr. Laux's contacts

with this State (the first two *Dever* Factors) are insignificant and isolated.  Mr. Laux had ***one***

chance contact with North Dakota – a trip to the State for a high school wrestling tournament over

a decade ago.  *See* Laux Decl. at ¶ 2.  He does not: (i) reside in North Dakota; (ii) regularly visit

North Dakota; (iii) work in North Dakota; (iv) pay taxes to North Dakota; (v) maintain any North

Dakota address or phone number; (vi) contract with anyone in North Dakota; (vii) maintain any

ownership interest in any North Dakota companies; or (viii) solicit business from North Dakota

residents.  Laux Decl. at ¶¶ 2-5.  Frankly, there are no allegations in the Complaint that Mr. Laux

engaged in any conduct that occurred in or was directed at North Dakota.  *See generally* Compl.

In short, Mr. Laux's connection to North Dakota is nothing more than "random, isolated, or

fortuitous…."  *Bros. & Sisters in Christ, LLC v. Zazzle, Inc*., 42 F.4th 948, 953 (8th Cir. 2022).  In

---

[5] If the Court desires to engage in the five-factor *Dever* analysis to assess the concept of general jurisdiction as it pertains to Mr. Laux rather than reject the concept out-of-hand, for the same reasons set forth below the *Dever* Factors overwhelmingly support a finding that personal jurisdiction does not exist over Mr. Laux under such a concept.

other words, the quality and quantity of Mr. Laux's contacts with this State are trivial at best.  The first two *Dever* Factors, therefore, indisputably weigh in favor of a finding that this Court **lacks** personal jurisdiction over Mr. Laux.  The same is true of the third *Dever* Factor – the relation between Mr. Laux's high school trip and his alleged defamation.

It is black-letter law that "isolated contacts" unconnected to the claims at issue in an action "are insufficient to satisfy the due process clause."  *See Kangas v. Kieffer*, 495 Fed. App'x 749, 751 (8th Cir. 2012) (citation omitted); *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264 (2017) ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." (citation omitted)).  Here, Mr. Laux's singular contact with this State is entirely unconnected to the claim asserted against him in this action.  Mr. Laux participated in a wrestling tournament in North Dakota when he was in high school.  He is currently the subject of a defamation claim that—as Plaintiff admits—is based on the text message conversation with a resident of the DMV area about a suite at a football field in Maryland and that morphed into a discussion about public controversy surrounding the name of the professional football team that plays there.  Compl. ¶¶ 30-52.  And, as noted above, the "fake group" purportedly the subject of the alleged defamatory statement is formed and exists under the laws of Virginia.  Accordingly, the first three *Dever* Factors, which carry the most weight, overwhelmingly favor dismissal of this lawsuit as to Mr. Laux for lack of personal jurisdiction.  *See, e.g.*, *Nuevos Destinos, LLC*, 2019 WL 6481441 at *8 (referring to the first three *Dever* Factors as warranting "significant weight" (citation and quotations omitted)); *Frazier*, 2022 WL 1303070 at *6 (referring to the first three *Dever* Factors as having 'primary importance[]' (citation and quotations omitted)).

As to the fourth *Dever* Factor, North Dakota does not have any legitimate or meaningful interest in providing a forum for this dispute between **nonresidents**.  *See, e.g.*, *Nuevos Destinos, LLC*, 2019 WL 6481441 at *9 (finding "North Dakota had no conceivable interest" in adjudicating a dispute between nonresidents based on events that occurred outside North Dakota).  Plaintiff is a nonresident corporation.  As a nonstock corporation, it is a citizen of the states where it maintains a principal place of business and is incorporated.  *See* 28 U.S.C. § 1332(c)(1).  Based on the record, Plaintiff is a citizen of Virginia.  Murphy Decl., Ex. 2 (identifying Virginia as Plaintiff's state of incorporation).  It is **not** a citizen of North Dakota.  Contrary to Plaintiff's allegations, its President's residence and an expired trade name registration do not confer citizenship on a **corporation**.  28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[]").  Plaintiff's trade name registration in North Dakota expired six years before the commencement of this suit.  *See* Murphy Decl., Ex. 1.  Likewise, a P.O. Box does not qualify as a principal place of business.  "[A] P.O. box may not serve as a principal place of business as it is not where a corporation's officers direct, control, and coordinate the corporation's activities."  *Spencer v. Pocono Int'l Raceway, Inc.*, No. 12-cv-1050, 2012 WL 2050168, at *2 (M.D. Pa. June 6, 2012) (citation omitted); *see also Escobar, Inc. v. Barwest Grp., LLC*, No. 20-cv-2771, 2021 WL 4319572, at *6 (D. Colo. Sept. 22, 2021) (same); *Hitachi Credit Am. Corp. v. Tulsa Telecom & Utilities LLC*, No. 09-cv-56, 2014 WL 585432, at *2 (N.D. Okla. Feb. 13, 2014) ("An Oklahoma limited liability company's principal place of business may not be a post office box."); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) ("We conclude that 'principal place of business' is best read as **referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities**.  It is the place that Courts of Appeals have

called the corporation's "nerve center." (citation omitted) (emphasis added)). Mr. Laux is certainly not a North Dakota citizen, and the events giving rise to the claim against him are based on communications between citizens of the DMV area. As such, the fourth *Dever* Factor does not support a finding of personal jurisdiction over Mr. Laux.[6]

Lastly, it is certainly inconvenient for the parties to litigate the claims against Mr. Laux in North Dakota (the fifth *Dever* Factor). The parties, witnesses, and discovery are located outside of North Dakota and, as noted above, the events giving rise to this lawsuit occurred in the DMV area. *See* Laux Decl. at ¶¶ 5-6. Consequently, under the totality of the circumstances, this State cannot constitutionally exercise personal jurisdiction over Mr. Laux under either the concepts of general or specific jurisdiction. Nor can it do so based on the "*Calder* Effects Test" as set forth in *Calder* and clarified in *Walden v. Fiore*, 571 U.S. 277 (2014).

## 2.   Even The *Calder* Effects Test Does Not Provide A Basis For Jurisdiction.

In cases involving intentional torts, the *Calder* Effects Test is implicated and provides an extremely limited alternative potential basis for the exercise of personal jurisdiction over a nonresident defendant. *See, e.g.*, *Frazier*, 2022 WL 1303070 at *7 ("The Supreme Court thus approved an 'effects' test that allows the assertion of personal jurisdiction over nonresident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" (citation omitted)). Stated another way, "this test 'allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed ***for the very purpose*** of having

---

[6] Even if Plaintiff can be considered a resident corporation on this record, then only the fourth *Dever* Factor would support a finding that suit can be constitutionally maintained against Mr. Laux in North Dakota. *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 595 (8th Cir. 2011) (finding Missouri has an interest in providing a forum for suits for resident corporations). The balance of the *Dever* Factors—and the most important *Dever* Factors—would still weigh strongly in favor of a finding that Mr. Laux lacks constitutionally significant contact with North Dakota.

their consequences felt in the forum state.'" *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010)
(citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc*., 946 F.2d 1384, 1390-91 (8th Cir. 1991))
(emphasis added). Under the *Calder* Effects Test, personal jurisdiction over a nonresident
defendant who commits a tort can be exercised only when the plaintiff makes a *prima facie*
showing that the alleged tort: "(1) [was] intentional, (2) [was] ***uniquely or expressly aimed*** at the
forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant ***knew***
was likely to be suffered[]" in North Dakota. *Bros. & Sisters in Christ, LLC*, 42 F.4th at 954
(citation and quotations omitted) (emphasis added). The *Calder* Effects Test is further limited by
two "interrelated" considerations: "[f]irst, the defendant's relationship with the forum state 'must
arise out of contacts that the ***defendant himself created with the forum state***" and, "[s]econd," the
inquiry must be on "the defendant's ***contacts with the forum state*** itself, not the defendant's
contacts with persons who reside there." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620
(8th Cir. 2021) (citation and quotations omitted) (emphasis added).

  Here, Plaintiff can, at best, only satisfy the first prong of the *Calder* Effects Test -- alleging
the existence of an intentional tort. The remaining elements cannot be satisfied. As the record
reflects, Mr. Laux did not ***uniquely and expressly*** aim his conduct at North Dakota. The text
conversation at issue was between Mr. Laux and Ms. King, who he believed to be in the DMV
area and is not, in any case, alleged to reside in North Dakota. Laux Decl. at ¶ 6. The conversation
was part of a solicitation for Ms. King and her family to renew their season tickets at FedEx Field
in Maryland. *Id.* Mr. Laux did not take any affirmative or conscious action to involve North
Dakota, any North Dakota entity, or any person in North Dakota in the conversation. He certainly

did not (and Plaintiff does not allege) provide the statement to Fox News.[7]  *See, e.g.*, Compl. at ¶ 53 (alleging an unnamed source provided the text exchange to Fox News).

Similarly, Mr. Laux did not know that the "brunt" of any harm would be suffered in North Dakota; he was unaware of any North Dakota connection, (*see* Laux Decl. at ¶ 6), and Plaintiff does not allege otherwise.  Nor does Plaintiff even contend the brunt of the harm it suffered was here.  *See generally* Compl.  The Complaint is devoid of any specific allegation that any harm (which Plaintiff alleges only in conclusory, generic terms) was suffered specifically in North Dakota.  Plaintiff contends only that it and unnamed members at undisclosed locations were harmed by shunning, avoidance, and that Plaintiff was perceived by unnamed people in undisclosed locations as "frauds, phonies, and impersonators[]" following Mr. Laux's private statement to one person - Ms. King.  *See* Compl. at ¶¶ 83-96.  Such bald, attenuated allegations do not establish a *prima facie* case for jurisdiction.  *See, e.g.*, *Frazier*, 2022 WL 1303070 at *3 ("conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction[]" (citation and quotations omitted)).  Furthermore, even if harm was suffered in North Dakota, that an injury may have occurred to a resident alone is insufficient for personal jurisdiction purposes due to Mr. Laux's lack of intent and knowledge regarding any North Dakota connection and express aiming.  *Bros. & Sisters in Christ, LLC*, 42 F.4th at 954; *see also Boyko v. Robinson*, 321 F. App'x 526, 527 (8th Cir. 2009) (finding no jurisdiction under the *Calder* Effects Test because "actions were not intentionally or expressly aimed at North Dakota[]" (citation omitted)).

---

[7] That a news outlet was provided Mr. Laux's communication (presumably by Ms. King) and republished it nationally cannot be conduct that Mr. Laux is responsible for.  *See, e.g.*, *McCurdy v. Hughes*, 248 N.W. 512, 515 (1933) (acknowledging the concept that a defendant may not be responsible for "the voluntary and unjustifiable" reproduction of a slanderous statement without his authority and beyond his control).

In sum, Plaintiff attempts to force a connection to North Dakota based solely through ***Plaintiff's own*** alleged, attenuated contacts, when this State has little, if any, connection to the lawsuit.[8]  In so doing, Plaintiff overlooks the Eighth Circuit's clear admonishments that: "the 'proper question' for personal jurisdiction" under the *Calder* Effects Test "'is not [whether] the plaintiff experienced a particular injury or effect but whether the ***defendant's conduct*** connects him to the forum in a meaningful way[,]" and "***[t]he plaintiff cannot be the only link between the defendant and the forum***." *Morningside Church, Inc.*, 9 F.4th at 620 (citations omitted) (emphasis added).  In light of the limited nature of Mr. Laux's contacts with this State, any exercise of personal jurisdiction over Mr. Laux by North Dakota would violate the Due Process Clause of the Constitution.  The action as to Mr. Laux should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II.   ALTERNATIVELY, A DISMISSAL OF THE COMPLAINT AS TO MR. LAUX IS WARRANTED UNDER RULE 12(b)(6).

Even assuming, *arguendo*, the Court can constitutionally exercise personal jurisdiction over Mr. Laux, the Complaint should still be dismissed because Plaintiff's defamation claim does not satisfy the facial plausibility pleading standard required by Rule 12(b)(6).

A "complaint must 'state a claim to relief that is plausible on its face.'" *Romantix-Fargo, Inc. v. City of Fargo*, No. 22-cv-183, 2023 WL 5000345, at *2 (D.N.D. Aug. 4, 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In short, "[a] plaintiff must show that success on the merits is more than a 'sheer possibility.'" *Kraft*

---

[8] Plaintiff's own connections to North Dakota are not even constitutionally significant.

16

*v. Essentia Health, Innovis Health, LLC*, 600 F. Supp. 3d 965, 970 (D.N.D. 2021) (citing *Iqbal*, 556 U.S. at 678). When a claim does not satisfy this pleading standard (like here), it should be, and must be, dismissed. *See, e.g.*, *Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted)).

In assessing a Rule 12(b)(6) motion courts "accept[] as true the factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *Romantix-Fargo, Inc.*, 2023 WL 5000345 at *2 (citing *Gorog v. Best Buy, Co*., 760 F.3d 787, 792 (8th Cir. 2014)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Defamation claims are particularly ripe for adjudication, as a matter of law, at the pleading stage. "[T]he Supreme Court has directed federal courts to expeditiously weed out unmeritorious defamation suits." *See Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 89 (D.D.C. 2018) ("Early resolution of defamation cases under Federal Rule of Civil Procedure 12(b)(6) 'not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive.'" (citation omitted)).

Against this backdrop, there can be no legitimate dispute that the defamation claims against Mr. Laux should be, and must be, dismissed.

## A.   Plaintiff Has Not, And Cannot State, A Cognizable Defamation Claim Against Mr. Laux.

The Complaint alleges a single cause of action against Mr. Laux: defamation.  Both libel or slander can constitute defamation.  Under North Dakota law, slander is defined as the "false and unprivileged publication other than libel," that, among other things"

> 3. Tends directly to injure the person in respect to the person's office, profession, trade, or business, either by imputing to the person general disqualifications in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to the person's office, profession, trade, or business that has a natural tendency to lessen its profits
>
> ….
>
> or 5. By natural consequence causes actual damage.

N.D.C.C § 14-02-04.  By statute, libel consists of "a false and unprivileged publication by writing… which exposes any person to hatred, con-tempt, ridicule, or obloquy, or which causes the person to be shunned or avoided, or which has a tendency to injure the person in the person's occupation."  N.D.C.C. § 14-02-03.

If a public figure is the plaintiff, to recover damages for defamation the plaintiff must establish that the defamatory statement at issue was made with "actual malice."  *Riemers v. Mahar,* 748 N.W.2d 714, 720-22 (N.D. 2008); *see also Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("Because Nelson Auto is a limited purpose public figure under Minnesota law, its Amended Complaint must plausibly allege that one or more of the allegedly false statements was made with actual malice." (citation omitted)).  As recognized by the Eighth Circuit in addressing a defamation claim under Minnesota law, "[e]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice."  *Nelson Auto Ctr., Inc.*, 951 F.3d at 958 (citing *Michel*

*v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016)).  This requirement exists because public figures "invite attention and comment[]" and, "[b]ecause they inject themselves in public controversies[,]" they "have voluntarily exposed themselves to increased risk of injury [for] defamatory [statements]."  *Riemers*, 748 N.W.2d at 721 (citation omitted) (alteration in original).  A person (or entity) becomes a limited public figure when they "voluntarily inject[] [themselves] or [are] drawn into a particular public controversy and thereby become[] a public figure for a limited range of issues."  *Id.* (quoting *Gertz v. Robert Welch, Inc.*; 418 U.S. 323, 337 (1974)).  The determination of such a status depends on "the nature and extent of the individual's participation in the controversy giving rise to the alleged defamation."  *Id.* (citation omitted).

Plaintiff asserts both libel and slander claims coextensively with one another in Count One of the Complaint against Mr. Laux.[9]  *See* Compl. at ¶¶ 83-96; *see also* N.D.C.C. § 14-02-02 (defamation can be libel or slander).  Neither claim is adequately pleaded.

1.   **Mr. Laux's Subjective Statement Is Not Defamatory As A Matter Of Law.**

First, Plaintiff has not pleaded, and cannot plead, that Mr. Laux made a defamatory statement.  To be actionable, a statement must be capable of being proven true or false.  *See, e.g.*, *Turkish Coalition of Am., Inc. v. Bruininks,* 678 F.3d 617, 625 (8th Cir. 2012) ("Statements about matters of public concern that are not capable of being proven true or false and statements that reasonably cannot be interpreted as stating facts are protected from defamation actions by the First Amendment.") (citations and quotation marks omitted).  In assessing whether a statement is

---

[9] Plaintiff attempts to allege a libel claim and a slander claim "[a]lternatively, and in addition…." Compl. at ¶ 90.  Slander, however, is defined in North Dakota as a statement that is ***not*** "libel," (N.D.C.C § 14-02-04), and yet Plaintiff's slander claim against Mr. Laux is based on the same allegedly libelous statement.  *Id.*  The claims certainly cannot be "in addition" to one another.

defamatory,[10] "the challenged words 'must be stripped of any pleaded innuendo and construed in their most innocent sense,' but at the same time 'must be considered in context, giving them their plain and ordinarily understood meaning.'" *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc*., 829 F.3d 576, 580 (8th Cir. 2016) (construing a defamatory statement under Missouri law); *Schmitt v. MeritCare Health Sys*., 834 N.W.2d 627, 633 (N.D. 2013) (if a communication is not libelous on its face, then "the court must decide whether the communication is capable of a particular meaning and whether that meaning is defamatory[]" (citation omitted)).

The statement at issue here is as follows: "[y]ou understand the people that started this petition is a fake group right?" Compl. at ¶ 51. This is, unequivocally, a statement of opinion relating to matters of public concern (i.e. the "viral" Internet petition involving the "Redskins" name) that does not contain a provably false connotation, thereby rendering it non-defamatory as a matter of law. *See, e.g.*, *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990); *see also Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) ("Consistent with this principle, both the Supreme Court and this Court of Appeals have long recognized that a defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of 'fact.'" (citations omitted)). This is clear on the face of the statement itself, but also from the context in which this statement was made.

Mr. Laux's opinion was proffered in the context of a discussion about a petition Plaintiff contends to be a matter of public importance and discourse. *See, e.g.*, Compl. at p. 2 & ¶¶ 30-52. In fact, Plaintiff's Complaint is littered with allegations about its name change petition and ensuing "public discourse…" on same. *See generally* Compl. As Plaintiff contends, the statement was

---

[10] This determination can be, and should be, made as a matter of law. *Turkish Coal of Am., Inc.*, 678 F.2d at 625 ("Whether a statement of fact can be interpreted as stating facts is a question of law" for the Court to decide.).

made in connection therewith.  Compl. at ¶¶ 30-52.  There is, however, a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]"  *New York Times v. Sullivan*, 376 U.S. 254, 271 (1964).  As the Supreme Court acknowledged, "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual[]" are protected, thus assuring "that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation."  *Milkovich*, 497 U.S. at 20 (internal citation omitted).

Even if Mr. Laux's comment was not made in connection with a matter of public discourse, the statement cannot legitimately be reasonably construed as anything other than rhetorical hyperbole rather than an actionable statement of fact.  In fact, courts that interpret the term "fake" in the context of defamation claims have generally found it to be figurative and/or hyperbolic language that is non-defamatory.  *See, e.g., Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992) (use of terms such as "fake" and "phony" were subjective and do not state facts); *Gray v. St. Martin Press. Inc.*, 221 F.3d 243, 248 (1st Cir. 2000) (calling the closeness of relationships "fake" was statement of opinion/subjective language); *Stoltz v. Cnty of Lancaster*, No. 08-cv-5622, 2011 WL 815709, at *16-17 (E.D. Penn. Mar. 7, 2011) (statements about "faking" an injury were embarrassing but not defamatory); *Lauderback v. Am. Broad. Cos.*, 741 F.2d 193, 196 (8th Cir. 1984) (terms "liar" and "crook" is non-actionable opinion); *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) ("crank" is a "colorful and insulting way of expressing disagreement…and it therefore belongs to the language of controversy rather than to the language of defamation[]").

Nonetheless, in a transparent attempt to avoid this conclusion and bolster its defamation claims, Plaintiff attempts to plead varying interpretations of the term "fake" that it hopes might

rise to the level of actionable, such as: (i) Plaintiff's members are not "'real' Native Americans," (Compl. at ¶ 60); (ii) Plaintiff's members are not "Native Americans at all[,]" (*id.* at ¶ 62); (iii) Plaintiff and its members are "'con artists[,]'" (*id.* at ¶ 89); (iv) Plaintiff is committing a crime or fraud "by falsely soliciting contributions[,]" (*id.* at ¶ 91); and/or (v) Plaintiff is an illegitimate company. *Id.* at ¶ 93. Yet, Plaintiff's attempt to rewrite the defamation in this case cannot be countenanced. First, ***none*** of these statements, or even connotations of such statements, exist in the statement made by Mr. Laux or the related text exchanges with Ms. King that comprise the conversation as issue. The phrase "con artist" does not appear in Mr. Laux's statement. *Id.* at ¶ 51. Nor does it contain any statement regarding Plaintiff's alleged commission of a crime or "qualifications as a nonprofit consisting solely of Native Americans whose mission is to educate Americans about Native American history and culture." *Contra* Compl. at ¶¶ 91 & 93. Second, the statement at issue must be construed in its context and "most innocent sense[]" rather than in the manner most suitable to Plaintiff. *See, e.g.*, *Bigfoot on the Strip, LLC v. Winchester*, No. 18-cv-3155, 2019 WL 4144320, at *5 (W.D. Mo. Aug. 30, 2019) ("In determining whether a statement is defamatory, the words must be stripped of any pleaded innuendo and construed in their most innocent sense. ... If a statement is capable of a nondefamatory meaning, and can be reasonably construed in an innocent sense, we must hold the statement nonactionable as a matter of law." (citation and quotations omitted)); *Schmitt v. MeritCare Health Sys.*, 834 N.W.2d 627, 633 (N.D. 2013) ("A communication is not libelous if the language used is not fairly susceptible of a defamatory meaning.").

Frankly, that Plaintiff proffers multiple possible interpretations of the phrase "fake group" hurts, not helps, its case. That the comment is susceptible to multiple interpretations only further underscores the fact that the comment is an "unfocused, wholly subjective comment…" – to wit,

*it is not a fact*. *See Lauderback*, 741 F.2d at 197; *Chambers v. Travelers Cos.*, 668 F.3d 559, 565 (8th Cir. 2012) (statement that was "'insufficiently precise and cannot be proven false[]'" was not defamation).  Indeed, as the Commanders properly argue,[11] "fake group," is a broad, unfocused, indefinite, imprecise and wholly subjective phrase, rendering it "incapable of proof and, thus, non-actionable."  *See Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 358-59 (D. Mass. 2017) (finding because the definition of fake was imprecise, the statements at issue were not actionable).  At best, the statement was unknowingly (but apparently) insulting Plaintiff, which does not render it defamatory without more.  *See, e.g.*, *Meier v. Novak*, 338 N.W.2d 631, 635 (N.D. 1983) ("It is axiomatic that opprobrious epithets, even if malicious, profane, and in public, are ordinarily not actionable. There is no right to recover for bad manners." (citation and quotations omitted)).  Plaintiff's defamation claims against Mr. Laux should therefore be dismissed with prejudice now at the earliest juncture possible.

2.   **As A Final Matter, Plaintiff Failed To Plead Malice, A Required Element Of Its Defamation Claims.**

Plaintiff's defamation claim as to Mr. Laux fails for a second, equally significant reason. Plaintiff fails to plead, and cannot plead, actual malice as required of a limited public figure. Plaintiff is – by its own pleading – a public figure on the limited issue of the Commanders' team name change.  Plaintiff contends it is a non-profit organization with a significant educational and cultural mission and voluntarily involved itself  in an ongoing controversy over the Commanders/Redskins name.  *See* Compl. at ¶¶ 1 & 30-52.  Accordingly, it must plausibly plead actual malice as an element of its defamation claims.  It did not.

---

[11] For the sake of brevity, Mr. Laux incorporates herein any arguments from the Commanders regarding the nature of his allegedly defamatory comment.

"Actual malice is knowledge that the statements are false or that the statements were made with reckless disregard for whether they were false." *Riemers*, 748 N.W.2d at 722 (citation omitted). Such an allegation is entirely absent from, and cannot be inferred from the allegations in, the Complaint. *See generally* Compl. In fact, the phrase reckless disregard does not appear in the Complaint. Nor does any allegation that Mr. Laux knew (or even suspected) his statement (of opinion) was false.

Plaintiff's most specific allegation in this regard is its claim that Mr. Laux's text message (to a single individual) was made to "silence" Plaintiff in the public discourse over the Commanders' name change. Compl. at ¶ 60. But such an (implausible) allegation is, at best, a threadbare legal conclusion not entitled to deference. *See, e.g., Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is also belied by the fact that Mr. Laux's conversation was between two private individuals. Laux Decl. at ¶ 6. Nor did he publish the statement publicly, as per Plaintiff's own pleading. Compl. at ¶ 53. Even if such allegations are considered, they do not plead actual malice in the context of a defamation claim. *See, e.g.*, *Greenbelt Co-op. Publishing Ass'n v. Bresler*, 398 U.S. 6, 10 (1970) ("spite, hostility or deliberate intention to harm" does not constitute actual malice under the First Amendment). Accordingly, Plaintiff's defamation claims suffer from pleading deficiencies that warrant their dismissal.

## CONCLUSION

Mr. Laux is a young man, residing in Maryland, with no meaningful connection to North Dakota, that simply had the misfortune of giving his opinion on a matter of public discourse in a text message to a single person. That text was leaked, without his knowledge or authorization, to the national media and then mischaracterized in a pleading to serve as the basis of a defamation claim filed in a Court he had no reasonable expectation of being hauled into. He is neither

constitutionally subject to jurisdiction in North Dakota nor has he defamed Plaintiff.  Mr. Laux, therefore, respectfully requests that the Complaint be dismissed as to him on personal jurisdiction grounds or, alternatively, for failure to state a claim.

Respectfully submitted,

**COLE SCHOTZ P.C.**
*Attorneys for Defendant, Matthew Laux*


By:____*/s/ Cameron A. Welch*_____
        Cameron A. Welch (*pro hac vice*)
        Elizabeth A. Carbone (*pro hac vice*)

**DATED:**  December 28, 2023