# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| NATIVE AMERICAN GUARDIAN'S ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON COMMANDERS, JOSH HARRIS, MATTHEW LAUX, and THE NATIONAL CONGRESS OF AMERICAN INDIANS,<br><br>Defendants. | Civil Action No. 23-cv-00186-PDW-ARS |

## DEFENDANT MATTHEW LAUX'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM

Of Counsel and On the Brief:
   Cameron A. Welch
   Elizabeth A. Carbone

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL ARGUMENT .................................................................................................................. 3

    I.    NAGA HAS NOT MADE A *PRIMA FACIE* SHOWING THAT PERSONAL JURISDICTION EXISTS OVER MR. LAUX. ................................. 3

        A.    Specific Jurisdiction Over Mr. Laux Does Not Exist. ................................ 3

        B.    The *Calder* Effects Test Does Not Confer Jurisdiction. ............................ 6

    II.    NAGA'S DEFAMATION CLAIM REMAINS DEFICIENT AS A MATTER OF LAW. .......................................................................................................... 8

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
   42 F.4th 948 (8th Cir. 2022) ...................................................................................5, 6, 7

*Calder v. Jones*,
   465 U.S. 783 (1984)..................................................................................................3, 7, 8

*Dever v. Hentzen Coatings, Inc.*,
   380 F.3d 1070 (8th Cir. 2004) .......................................................................................4, 5

*Emo v. Milbank Mut. Ins. Co.*,
   183 N.W.2d 508 (N.D. 1971) ...........................................................................................8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021).......................................................................................................5

*Johnson v. Arden*,
   614 F.3d 785 (8th Cir. 2010) ............................................................................................6

*Johnson v. Woodcock*,
   444 F.3d 953 (8th Cir. 2006) ............................................................................................4

*Keeton v. Hustler Mag., Inc.*,
   465 U.S. 770 (1984)..........................................................................................................3

*McCurdy v. Hughes*,
   248 N.W. 512 (1933) ......................................................................................................10

*Morningside Church, Inc. v. Rutledge*,
   9 F.4th 615 (8th Cir. 2021) ...............................................................................................8

*Nuevos Destinos, LLC v. Peck*,
   No. 19-cv-45, 2019 WL 6481441 (D.N.D. Dec. 2, 2019), *aff'd*, 999 F.3d 641
   (8th Cir. 2021).................................................................................................................4, 5

*Nunes v. Lizza*,
   12 F.4th 890 (8th Cir. 2021) .............................................................................................9

Mr. Laux[1] respectfully submits this reply brief in further support of his motion to dismiss the Complaint under Federal Rule of Civil Procedure ("*Rule*") 12(b)(2) or Rule 12(b)(6).

## PRELIMINARY STATEMENT

NAGA wants its opinion on a national debate over the Commanders' team name change "to be heard through the millions of screaming voices on social media[.]" *See* Memorandum of Law in Opposition ("*Opp. Br.*") [Dkt. No. 42], p. 14. With NAGA's motivations underlying this suit now laid bare, the inherent and irremediable flaws in its Complaint become all the clearer.

NAGA contorts a single text messaged statement of "[y]ou understand the people that started this petition is a fake group right[]" to suit its narrative, namely that Mr. Laux launched an attack on the tribal affiliation or heritage of NAGA's membership. Nothing is further from the truth, but that is the meaning NAGA ascribes to those words precisely because it suits NAGA's narrative and objectives. There is, however, a litany of authority establishing that statements something or someone is "fake" are non-actionable hyperbolic, rhetorical, statements of opinion incapable of being proven true or false. Such statements cannot, as a matter of law, serve as the basis for a defamation claim, making NAGA's claim ripe for dismissal.

That is not the only fatal flaw in NAGA's defamation claim. NAGA attempts to remedy its inability to plead actual malice on the part of Mr. Laux by arguing that it is not a public figure. Of course, NAGA's public promotion of a petition advocating for one side of "a divisive national debate" over the Commanders' team name confirms otherwise. Even before Mr. Laux sent his text message, NAGA had made itself a public figure in the "name change" debate by appearing on

---

[1] The capitalized terms used herein shall have the same meaning ascribed to the term in Mr. Laux's Memorandum in Support ("*Laux Br.*") [Dkt. No. 29] unless otherwise defined herein.

Fox News advocating for its petition,[2] engaging with media outlets, issuing press releases and making social media posts on its own X (formerly Twitter) account seeking public attention and support for its cause.[3] NAGA's role as a public figure engaged in a divisive public debate, coupled with its failure to plead actual malice, also warrants dismissal of the Complaint.

Regarding personal jurisdiction, NAGA, incorporated in Virginia, admits suit was filed in this District because one of its corporate officers resides here and because, NAGA argues through its New York attorney, it would be too burdensome to litigate elsewhere. That does not, however, establish personal jurisdiction over Mr. Laux. Properly abandoning any notion of general jurisdiction, NAGA nonetheless attempts to demonstrate a *prima facie* case of personal jurisdiction over Mr. Laux through specific jurisdiction or the *Calder* Effects Test. Virtually all of NAGA's specific jurisdiction arguments are predicated on the Commanders' alleged business within this District. The Commanders and Mr. Laux cannot be conflated. There is not a single contact between Mr. Laux and North Dakota that would render an exercise of personal jurisdiction appropriate under the Due Process Clause. It is undisputed that Mr. Laux does not reside in, conduct business in, or otherwise avail himself of the privileges of the State of North Dakota. Specific jurisdiction does not, and cannot, lie under such circumstances.

NAGA's argument under the *Calder* Effects Test is equally unavailing. NAGA contends Mr. Laux should have known he would be subject to a lawsuit in North Dakota. But that unsubstantiated allegation is sharply contradicted by the record. It is entirely implausible for NAGA to argue Mr. Laux anticipated being subject to a lawsuit in North Dakota (or anywhere

---

[2] *See, e.g.*, https://www.foxnews.com/sports/native-american-group-calls-commanders-rename-team-redskins-cannot-erase-history (last visited February 1, 2024).

[3] *See, e.g.,* https://twitter.com/GuardiansNative/status/1688906754053066752 (last visited February 1, 2024).

else) based solely on a text message he sent from Maryland to a DMV area resident in connection with a suite in a Maryland stadium discussing the public debate over the Washington Commanders' team name – even if that single text message contained his opinion that NAGA, incorporated in Virginia, is a "fake group." That the text message was then leaked to Fox News (by NAGA or someone else) without his knowledge or consent and republished does not invoke *Calder*, nor does Ms. Davidson's personal residency in North Dakota. There is, simply put, no basis for personal jurisdiction over Mr. Laux.

For these reasons, elaborated upon below, this Court should grant Mr. Laux's motion and dismiss NAGA's Complaint.

## LEGAL ARGUMENT

### I. NAGA HAS NOT MADE A *PRIMA FACIE* SHOWING THAT PERSONAL JURISDICTION EXISTS OVER MR. LAUX.

#### A. Specific Jurisdiction Over Mr. Laux Does Not Exist.

NAGA's opposition improperly conflates the three remaining defendants, Mr. Laux, the Commanders, and Josh Harris. Each are separate entities that must, as a matter of black-letter law, possess their own sufficient contacts with the State of North Dakota in order for there to be a constitutional exercise of personal jurisdiction over each respective defendant. *See, e.g.*, Opp. Br. at pp. 6-8. Mr. Laux is being sued in his individual capacity and thus it is only *his* individual contacts with this forum that are relevant. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually." (citation omitted)); *Calder v. Jones*, 465 U.S. 783, 790 (1984) (same). Looking specifically at the contacts between Mr. Laux and North Dakota, *conspicuously absent* from NAGA's opposition is a *single* constitutionally significant contact between Mr. Laux and North Dakota in accordance with any of the *Dever* Factors. Opp. Br. at pp. 6-8.

With respect to the primary *Dever* Factors addressed by NAGA (e.g., the first and third *Dever* Factors), NAGA resorts to unsubstantiated speculation. As to the first *Dever* Factor, NAGA alleges (without factual support) Mr. "Laux directed his statement against NAGA[,]" which "has the same effect as directing his activities toward the residents of North Dakota." *Id.* at p. 6. As to the third *Dever* Factor, NAGA claims there is a relationship between Mr. Laux's "contact" and the defamation claim because "Defendant Commanders and Laux have contacts with the State of North Dakota through the solicitation and purchasing of tickets sales[,]" and Mr. "Laux's defamatory statement was made in relation to soliciting a potential customer to buy season tickets." *Id.* at p. 7.

These allegations are neither asserted in, nor can be reasonably inferred from, allegations in the Complaint. *Compare* Opp. Br. at pp. 6-7 *with* Compl. at ¶¶ 47-53. Even if considered part of the pleading, "[c]ontact by phone or mail is insufficient to justify[,]" without more, an exercise of specific jurisdiction. *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (citation omitted). Moreover, conclusory allegations such as those do not satisfy NAGA's burden of establishing a *prima facie* case of specific jurisdiction. *See, e.g.*, *id.*; *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (citing *Davis v. St. John's Health Sys., Inc.*, 348 Ark. 17, 1 (2002) ("[m]ere conclusory statements devoid of a factual foundation do not suffice in this inquiry[]")). A *prima facie* case is only established if there is sufficient *factual* support for an exercise of specific jurisdiction. *Dever*, 380 F.3d at 1072 (jurisdictional showing is assessed based on pleadings, affidavits, and exhibits rather than briefs). NAGA does not offer any such factual support.

Equally problematic for NAGA, its allegations are directly contradicted by evidence. *See, e.g.*, *Nuevos Destinos, LLC v. Peck*, No. 19-cv-45, 2019 WL 6481441, at *11 (D.N.D. Dec. 2,

4

2019), *aff'd*, 999 F.3d 641 (8th Cir. 2021) ("speculative" allegations "directly contradicted by other competent evidence in the record[]" were insufficient to support a finding of general jurisdiction). As set forth in the Declaration of Matthew Laux ("*Laux Decl.*") [Dkt. No. 30], Mr. Laux is a citizen of Maryland and maintains no real or personal property in North Dakota. *Id.* at ¶¶ 2 & 4.  Among other things, he does not: (i) work in or knowingly conduct or solicit business (e.g., ticket sales) from anyone in North Dakota; (ii) knowingly contact or attempt to contact anyone from North Dakota; or (iii) visit North Dakota with the exception of *one* trip over a decade ago when he was in high school.  Laux Decl. at ¶¶ 2-5.  Whether the Commanders sell tickets in North Dakota has no bearing on Mr. Laux.  Even the text message with Ms. King has no legitimate connection to North Dakota as Ms. King is a DMV area resident being contacted regarding a suite in a Maryland stadium.  *Contrast id.* at ¶ 6 *with* Opp. Br. at p. 6.  At the most, Mr. Laux's connection to North Dakota constitutes a quintessential example of "random, isolated, or fortuitous…" contacts that are insufficient grounds on which to exercise jurisdiction over an individual.  *See, e.g.*, *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 953 (8th Cir. 2022) (citation and quotations omitted); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (contacts with a state "must be the defendant's own choice and not 'random, isolated, or fortuitous[]'") (citation omitted)).

NAGA's opposition as it pertains to the secondary *Dever* Factors (the fourth and fifth factors) is similarly unavailing.  *See* Opp. Br. at pp. 7-8.  North Dakota's interest in adjudicating this dispute would, respectfully, be *de minimis* at best and certainly would not outweigh the primary *Dever* Factors.  *See* Laux Br. at pp. 12-13.  No party here other than NAGA has a connection to North Dakota, and even NAGA's connection remains questionable.  Indeed, while NAGA relies heavily on Ms. Davidson's residence as proof that NAGA has a North Dakota

connection, NAGA's conflation of NAGA and Ms. Davidson is improper. Ms. Davidson is a corporate officer of NAGA, not the corporation. By its own admission, its members come from other tribes who presumably do not all reside in Devils Springs, North Dakota. And there is no contention by NAGA that is even the case. *See* Declaration of Eunice Davidson ("*Davidson Decl.*") [Dkt. No. 42-2], ¶ 6. NAGA also ignores that it is incorporated in Virginia and the events underlying this lawsuit all occurred in the DMV area.

NAGA's assertion that this Court should disregard well-settled law concerning the *Dever* Factors and their relative importance to, as a matter of policy, provide "an accessible forum" for NAGA is patently meritless. Opp. Br. at p. 8. A citizen's constitutional due process rights cannot, and do not, yield to the convenience of the adverse party. And even if they did, NAGA's claim that leaving this State is somehow "inconvenient[]" and "impossible" is disingenuous. *Id.* at p. 8. NAGA has no issue litigating outside of North Dakota. It hired New York counsel, is incorporated in Virginia, recently litigated as a plaintiff in Colorado, and filed an amicus brief with the USPTO, to name a few out-of-state activities. *See* Murphy Decl., Exs. 1-3; *see also* Davidson Decl. at ¶ 20. In sum, there is no basis for the exercise of specific jurisdiction over Mr. Laux here.

### B. The *Calder* Effects Test Does Not Confer Jurisdiction.

NAGA's opposition also misconstrues the *Calder* Effects Test, which permits the assertion of personal jurisdiction over a non-resident defendant "whose acts are performed *for the very purpose* of having their consequences felt in the forum state." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (citation and quotations omitted) (emphasis added). Contrary to NAGA's opposition, it is well-settled that in order for jurisdiction to be proper under *Calder*, NAGA is required to make a *prima facie* showing that Mr. Laux's text: (1) was an intentional tort (as set forth herein it is not, as a matter of law), "(2) [was] *uniquely or expressly aimed* at [North Dakota], and (3) caused harm, the brunt of which was suffered—and which the defendant *knew was likely*

6

*to be suffered—*" in North Dakota. *Bros. & Sisters in Christ, LLC*, 42 F.4th at 954 (citation and quotations omitted) (emphasis added). NAGA failed to meet this burden.

Reduced to its core, NAGA claims the *Calder* Effects Test is satisfied because Mr. Laux allegedly "directed" his text message at individuals residing "on a reservation in North Dakota", knew the brunt of the harm would be suffered here, and "knew that NAGA started the petition, and knew enough to claim that its members were fake." Opp. Br. at pp. 8-9. Those conclusory allegations are meritless. The text message does not refer to North Dakota, does not refer specifically to Ms. Davidson (the sole member of NAGA identified by Plaintiff to actually reside in North Dakota), nor does it refer to any individual NAGA members or their heritage. It does not even reference NAGA by name. As the record further reflects, Mr. Laux was entirely unaware of any connection North Dakota had to his communication with a single DMV area resident, Ms. King. *See* Laux Decl. at ¶ 6. NAGA has utterly failed to make any showing to the contrary. There is nothing in the record to even remotely suggest Mr. Laux was aware that NAGA, incorporated in Virginia, had an officer who resides in North Dakota. These facts, which cannot be legitimately disputed, clearly evidence that Mr. Laux's conduct was neither expressly aimed at North Dakota nor did he intend for NAGA to be harmed in North Dakota (or anywhere else) by a single text message sent to a single individual residing in the DMV area. NAGA is not Ms. Davidson. That NAGA is allegedly suffering because of Fox News' republication (which was neither sanctioned by Mr. Laux nor foreseeable) does not indicate any "aiming."

The circumstances of this case are thus not analogous to *Calder*. In *Calder*, a professional television entertainer living in California was the subject of a defamatory article published by the National Enquirer, which had its largest circulation in California. *Calder*, 465 U.S. at 785-86. The entertainer filed a defamation lawsuit in California against the article's author and editor, who

7

were Florida residents aware of the article's reach, and the entertainer's state of residence, among other things. *Id.* The facts here are very different. A resident of Maryland had a text message conversation about a stadium suite in Maryland, during the course of which the Maryland resident shared his opinion regarding a national debate with another, single, resident of the DMV area.

This case is a quintessential example of a plaintiff improperly seeking to force a connection between a non-resident defendant and its own (attenuated) contacts. *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021) ("'[T]he plaintiff cannot be the only link between the defendant and the forum.'" (citation omitted)). As such, the Complaint as to Mr. Laux should be dismissed pursuant to Rule 12(b)(2).

## II. NAGA'S DEFAMATION CLAIM REMAINS DEFICIENT AS A MATTER OF LAW.

As NAGA repeatedly concedes in its opposition, Mr. Laux's text message to Ms. King was sent "*in the context of a divisive national debate*[.]" Opp. Br. at p. 9. And, in that context, even NAGA cannot sufficiently plead what in the text is defamatory. *See* Opp. Br. at pp. 12-17. It takes NAGA numerous sentences and logical leaps to try to explain why Mr. Laux's text *should be construed as* defamatory. *See* Opp. Br. at pp. 11-17. NAGA's inability to clearly and concisely demonstrate how the text is defamatory confirms it is *not* libelous *per se* as a matter of law. *Contra* Opp. Br. at p. 13. A statement "'is libelous *per se* when **without the aid of innuendo** it must be presumed to expose the plaintiff to hatred, contempt, ridicule, or obloquy, or cause him to be shunned or avoided, or have a tendency to injure him in his occupation.'" *Emo v. Milbank Mut. Ins. Co.*, 183 N.W.2d 508, 513 (N.D. 1971) (citation omitted) (emphasis added).

Unable to easily articulate a defamatory statement and meaning, NAGA resorts to rewriting the text message for the Court, even going so far as to claim that the term "people" is somehow defamatory. *See, e.g.*, *id.* at p. 16. NAGA is struggling to plead its defamation claim for one

8

simple reason: the text message constitutes a statement of opinion about a matter of public concern incapable of being proven true or false and, consequently, is non-actionable. Laux Br. at pp. 18-23. Indeed, NAGA makes no meaningful effort to, and cannot, distinguish the litany of cases Mr. Laux cites in which a statement using the phrase "fake" was considered to be non-factual rhetorical hyperbole.[4] *Compare* Laux Br. at pp. 21-23 *with* Opp. Br. at pp. 12-17. The text is non-actionable.

The deficient nature of NAGA's defamation claim is only further accentuated by the failure to plead malice. There is nothing in the record (the Complaint or otherwise) that Mr. Laux knew the identities (let alone the ancestry) of any of NAGA's members and thus was aware of the alleged falsity of his claims. *See* Compl. at ¶¶ 47-64 & 83-96. The closest NAGA comes to pleading actual malice is the assertion in its opposition that Mr. Laux made the statement "recklessly" to Ms. King, disregarding that he should have been "consciously aware of the possibility it would reach NAGA…" Opp. Br. at p. 9. This conclusory statement is tantamount to an admission there was no actual malice, as purported "conscious awareness" of the mere possibility a statement (of opinion) *may* reach someone who might take offense to it falls far short of the actual malice definition. Implicitly recognizing this clear pleading deficiency, NAGA offers only the half-hearted argument that it is not a public figure and, by extension, is therefore not required to plead malice. *Compare* Laux Br. at pp. 23-24 *with* Opp. Br. at p. 17. NAGA's protestation rings hollow. NAGA actively sought out media attention to inject itself in this public debate because, by its own admissions, it wants to "be heard" and have "a seat at the table." Davidson Decl. at ¶ 23. NAGA made itself a limited public figure. It is required to plead actual malice. It failed to do so.

---

[4] NAGA's "defamation by implication" claim is not in the Complaint. *Compare* Opp. Br. at pp. 13-16 *with* Compl. at ¶¶ 83-96. The claim is not adequately pled for the same reasons the text does not constitute defamation. *See, e.g.*, *Nunes v. Lizza*, 12 F.4th 890, 896 (8th Cir. 2021) ("implication constitutes defamation 'even though the particular facts are correct,' **unless** it qualifies as an 'opinion.'" (citation omitted) (emphasis added)).

Lastly, it cannot be overlooked (as NAGA tries to do) that NAGA's entire defamation claim is predicated on the *republication* of the text on Fox News that, by NAGA's own admission, cannot be attributed to Mr. Laux. *See* Compl. at ¶ 53 (claiming unidentified source provided the text message to Fox News). NAGA does not allege (nor can it allege) Mr. Laux had control, or the right of control, over that republication. As such, Mr. Laux cannot, as a matter of law, be held liable for the alleged harm NAGA suffered as a result of the republication. *See, e.g.*, *McCurdy v. Hughes*, 248 N.W. 512, 515 (1933) (a defendant is not responsible for "voluntary and unjustifiable" reproduction). This too is fatal. In sum, the defamation claim fails as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, this Court should granted this motion and dismiss the Complaint as to Mr. Laux under Rule 12(b)(2) or, alternatively, Rule 12(b)(6).

Respectfully submitted,

**COLE SCHOTZ P.C.**
*Attorneys for Defendant, Matthew Laux*

By:   */s/ Cameron A. Welch*
        Cameron A. Welch (*pro hac vice*)
        Elizabeth A. Carbone (*pro hac vice*)

**DATED:** February 2, 2023

10