UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| NATIVE AMERICAN GUARDIAN'S ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON COMMANDERS, JOSH HARRIS, MATTHEW LAUX, and THE NATIONAL CONGRESS OF AMERICAN INDIANS,<br><br>Defendants. | Case No. 3:23-cv-186<br><br>Hon. Peter D. Welte |

**DEFENDANTS WASHINGTON COMMANDERS AND JOSH HARRIS'S REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| I. PLAINTIFF'S OPPOSITION FAILS TO DEMONSTRATE THAT THIS COURT HAS PERSONAL JURISDICTION OVER THE COMMANDERS DEFENDANTS. | 1 |
| II. PLAINTIFF'S OPPOSITION FAILS TO NEGATE THE COMMANDERS DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. | 6 |
|     A. Plaintiff Has Not Demonstrated a Plausible Defamation Claim. | 6 |
|     B. The Court Must Dismiss Count II and Count III Because Plaintiff Dismissed Defendant NCAI from the Lawsuit. | 8 |
| CONCLUSION | 10 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
    582 U.S. 255 (2017) .................................................................................................. 2, 4

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
    42 F.4th 948 (8th Cir. 2022) ........................................................................................... 5

*Edwards v. City of Florissant*,
    58 F.4th 372 (8th Circ. 2023) ........................................................................................ 6

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
    856 F.3d 106 (D.C. Cir 2022) ........................................................................................ 6

*McCampbell by & through Hidani v. McCampbell*,
    No. CV 18-1543, 2020 WL 2307622 (D. Minn. May 8, 2020) ................................... 9

*Michel v. NYP Holdings, Inc.*
    816 F.3d 686 (11th Cir. 2016) ....................................................................................... 8

*Nunes v. Lizza*,
    12 F.4th 890 (8th Cir. 2021) ...................................................................................... 7, 8

*Rivera v. Bank of Am., N.A.*,
    993 F.3d 1046 (8th Cir. 2021) .................................................................................... 1, 9

*Shipyard Brewing Co., LLC v. Logboat Brewing Co., LLC*,
    No. 2:17-CV-04079-NKL, 2017 WL 6733971 (W.D. Mo. Dec. 29, 2017) ................. 8

*Stanton v. St. Jude Med., Inc.*,
    340 F.3d 690 (8th Cir. 2003) ......................................................................................... 3

*Torres v. City of St. Louis*,
    39 F.4th 494 (8th Cir. 2022) .......................................................................................... 9

*W. Publ'g Corp. v. Stanley*,
    No. CIV. 03-5832(JRT/FLN, 2004 WL 73590 (D. Minn. Jan. 7, 2004) ...................... 3

*Zidon v. Pickrell*,
    344 F. Supp. 2d 624 (D.N.D. 2004) ........................................................................... 2, 3

**Rules**

Rule 12(b)(6) .......................................................................................................................... 8

**Constitutional Provisions**

First Amendment .................................................................................................................6, 7, 8

**Other Authorities**

https://www.law360.com/articles/1787817/native-group-urges-court-to-keep-nfl-conspiracy-bid-in-play ............................................................................................................9

## INTRODUCTION

The Commanders Defendants submit this Reply to NAGA's Opposition to Defendants' Motion to Dismiss. Dkt. 42 ("NAGA's Opposition"). NAGA's Opposition fails to provide any legal basis: 1) to establish personal jurisdiction over the Commanders Defendants in this Court; and 2) for its purported defamation and conspiracy claims to survive. To the contrary, NAGA notably fails to address many of the grounds for dismissal articulated in Defendants' Motion to Dismiss. NAGA's Opposition restates an inherently implausible claim that within days of new owners acquiring the team, the Commanders crafted a racially-motivated plan to defame NAGA, one of many participants in the public debate about the Club's name, and implemented this plan through a single word in one text from one salesperson to a former suite holder, all in the DMV area.[1] NAGA's Opposition does not come close to meeting the exacting burden it carries to plausibly plead facts supporting this theory and, therefore, this Court should dismiss NAGA's Complaint in its entirety.

## ARGUMENT

### I. PLAINTIFF'S OPPOSITION FAILS TO DEMONSTRATE THAT THIS COURT HAS PERSONAL JURISDICTION OVER THE COMMANDERS DEFENDANTS.

Plaintiff fails to respond to, and thus waives opposition to, many of the Commanders Defendants' arguments demonstrating that this Court lacks personal jurisdiction over them. First, in effect, NAGA concedes that this Court lacks personal jurisdiction over Defendant Harris. NAGA has not even attempted to refute Harris's declaration, which demonstrates that he has no contacts with North Dakota. Dkt. 34. *See Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021) ("Because Rivera did not raise this argument before the district court in opposition to

---

[1] The capitalized terms used herein shall have the same meaning ascribed to the term in the Memorandum of Law in Support of Defendants Washington Commanders and Josh Harris's Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, for Failure to State a Claim Upon Which Relief Can Be Granted. Dkt. No. 32.

BANA's motion to dismiss, we consider it waived."). NAGA further concedes that this Court does not have general personal jurisdiction over the Club. Dkt. 42 pp. 5-9.

Instead, Plaintiff exclusively contends that this Court has specific jurisdiction over the Club because of its employee's purported conduct, even though that employee (Defendant Laux) has no material contacts with North Dakota. Dkt. 42 pp. 5-9; Dkt. 30 ¶¶ 2-7. Absent from Plaintiff's Opposition, however, is any acknowledgement of a fundamental premise which defeats this argument—specific jurisdiction is proper only if NAGA's claims arise out of the Club's contacts with North Dakota. *Zidon v. Pickrell*, 344 F. Supp. 2d 624, 628 (D.N.D. 2004) ("specific jurisdiction requires that the cause of action arise out of or relate to the defendants' contacts with the forum state.") (citing *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 648 (8th Cir. 2003)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264 (2017) (citation omitted). NAGA has neither demonstrated that the Club's conduct is related to its present claim nor has NAGA demonstrated that Defendant Laux's allegedly defamatory statement has any connection to North Dakota. NAGA fails to meet its burden to prove jurisdiction exists.

Tacitly admitting its failure to establish facts supporting specific jurisdiction, Plaintiff seeks to introduce facts to claim that it has suffered harm in this District. *See* Dkt. 46 pp. 7-8. Yet, it still has not met and cannot meet, its burden to establish that the Club had "fair warning" that the Club would be haled into a North Dakota court. *Zidon v. Pickrell,* 344 F. Supp. 2d 624, 628 (D.N.D. 2004) ("the primary issue is whether the non-resident defendants have fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereignty" (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 576 (8th Cir. 1992)) (internal quotation marks omitted). Fair

warning requires a showing that the Club "purposefully directed" its conduct at the residents of North Dakota. *Zidon*, 344 F. Supp. 2d at 628. NAGA has offered no plausible basis to meet this burden. NAGA's theory is implausible on its face, and NAGA simply has not demonstrated, and cannot demonstrate, that the allegedly defamatory text message was purposefully directed at North Dakota or its residents.

Plaintiff urges that NAGA President Eunice Davidson's residence on a North Dakota reservation along with other purported NAGA members is evidence that all Native Americans on that reservation are impacted parties to this litigation. Dkt. 42 pp. 7-8. Neither Ms. Davidson nor any other unidentified individuals are parties to the Complaint. Moreover, aside from Ms. Davidson, NAGA offers no sworn statements from any purported NAGA members. Plaintiff's attempt to conjure up notions of harm to North Dakota residents in this regard is unsupportable, meritless and further revealing that its jurisdictional claim lacks any substance.

Plaintiff also glosses over the second prong of the specific jurisdiction test (one of three factors of "primary importance") and fails to meet its fundamental burden to prove this element. *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003). While in some cases a single contact may confer jurisdiction, the cases NAGA cites demonstrate that the single contact must be related to the lawsuit. *W. Publ'g Corp. v. Stanley*, No. CIV. 03-5832(JRT/FLN, 2004 WL 73590, at *4 (D. Minn. Jan. 7, 2004) (specific jurisdiction established in breach of contract action because non-resident defendant voluntarily entered into a contract with a Minnesota company); *Zidon v. Pickrell*, 344 F. Supp. 2d 624, 632 (D.N.D. 2004) (specific jurisdiction established because defendant created and posted allegedly defamatory statements on a website, and thus "all of [Defendant's] contacts with North Dakota are related to [Plaintiff's] claims of defamation and intentional infliction of emotional distress."). Here, the Club's immaterial number of ticket sales

3

to individuals with an address in North Dakota are wholly unrelated to the present lawsuit, Dkt. 32 pp. 11-15, and are insufficient to confer jurisdiction.

Grasping for any basis to establish jurisdiction, Plaintiff argues that "Laux's defamatory statement was made in relation to soliciting a potential customer to buy season tickets." Dkt. 42 p. 7. Yet, NAGA has not asserted, and cannot assert, that the potential customer, Ms. King, is a resident of North Dakota or has any connection with this District.[2] Indeed, there is zero evidence linking the allegedly defamatory statement to an attempt to solicit ticket sales from a North Dakota resident.[3] Because there is no connection between the Club's activity with North Dakota and the specific conduct in this lawsuit, "specific jurisdiction is lacking." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264 (2017).

Further, NAGA's claim that this Court should exercise jurisdiction because litigating in another forum would be "near impossible [] to afford", rings hollow at best. Dkt. 46 p. 8. NAGA would not be unduly burdened by dismissal. Despite casting itself as a disadvantaged educational and policy advocate, NAGA is scarcely unsophisticated or without resources. NAGA is an experienced multi-state operation. Through its silence, NAGA now concedes that its allegation in the Complaint that it is a North Dakota corporation is untrue, and that, in fact, it is incorporated in Virginia. Dkt. 23 ¶¶ 4, 5, Dkt. 23-2. Through its New York counsel, it has asserted this purported claim in this forum. It is uncontested that it injected itself into a national public debate and created, advanced, and publicly brandished an on-line petition with more than 132,000 signatures to advance its interests. The Declaration of Eunice Davis (Dkt. 42-2) offered by NAGA confirms its broad reach into national public issues:

---

[2] Ms. King is likely a resident of either the District of Columbia, Maryland or Virginia. Dkt. 30 ¶ 6.
[3] Conveniently, NAGA failed to address that the Club cannot solicit ticket sales in North Dakota. *See* Dkt. 33 ¶¶ 28- 33.

4

> NAGA'S mission is to educate <u>Americans</u> about Native American culture and history. We advocate for increased education about Native Americans, especially <u>in public educational institutions</u>, and greater recognition of Native American Heritage <u>through high-profile venues of sports and other public platforms</u>.

*Id.* at ¶ 9 (emphasis added). It is wholly unreasonable for NAGA to ***now*** present itself as disadvantaged solely to establish jurisdiction in this Court.

Moreover, NAGA is hardly a novice in pursuing legal claims in other states. NAGA brought a pending lawsuit in federal district court constitutionally challenging the application of a Colorado law concerning use of Native American mascots in schools, *i.e.* (Dkt. 23-3), underscoring its proficiency and versatility with legal matters and proceedings outside of North Dakota. NAGA also filed an amicus brief opposing a United States Patent Office decision regarding the Club's name. Dkt. 42-2 ¶20. Accordingly, NAGA's David-versus-Goliath pleas to the Court lack any merit and provide no support for this Court to find personal jurisdiction over the Commanders Defendants.

For the reasons listed above, NAGA also has not satisfied, and cannot satisfy, the *Calder* Effects Test, which permits the exercise "of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 954 (8th Cir. 2022) (citation omitted). Plaintiff misreads the test asserting, "it is of no consequence" whether Laux knew where NAGA is located. Dkt. 42 p. 9. To the contrary, such a showing by NAGA is essential to meet its burden. *Calder* specifically requires that the defendant know where the harm "was likely to be suffered" and requires the defendant to have expressly aimed its conduct at the forum state. *Zazzle, Inc.*, 42 F.4th at 954. NAGA has not established, and cannot establish, that Mr. Laux sent an allegedly defamatory text that was expressly aimed at North Dakota while knowing it was likely that harm would be suffered in North Dakota.

Because Plaintiff's Opposition effectively concedes that this Court does not have jurisdiction over Defendant Harris and because Plaintiff cannot demonstrate that this Court has personal jurisdiction over the Club, the Court should dismiss the complaint for lack of personal jurisdiction.

## II. PLAINTIFF'S OPPOSITION FAILS TO NEGATE THE COMMANDERS DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. Plaintiff Has Not Demonstrated a Plausible Defamation Claim.

NAGA's Opposition provides no support to meet its burden to set out a defamation claim that "is plausible on its face." *E.g. Edwards v. City of Florissant*, 58 F.4th 372, 376 (8th Circ. 2023) (citations omitted); *see* Dkt. 32 pp. 5-6. To the contrary, there is nothing plausible about NAGA's speculative and facially implausible theory that the Club conceived and orchestrated an elaborate, race-driven plan to denigrate, undermine and "cancel" NAGA, and chose to do so by way of a single salesperson's offhanded text to one potential ticket purchaser.[4] Despite all the noise and false assertions of racism and other motivations NAGA has hurled against the Commanders Defendants, there is no plausible allegation that the Club knew, or much less authorized, Laux's text or that the text had anything to do with a plan to harm NAGA. Well-established First Amendment law precludes NAGA from substituting speculation for factual pleading and warrants judicial scrutiny at this stage to prevent any chilling effect on free speech and to avoid wasteful expense on meritless claims. *E.g. Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir 2022) (citations omitted); *see* Dkt. 32 p. 6. The Court need look no further

---

[4] The text message was mysteriously "leaked" to the media, resulted in widespread press and media interviews of NAGA representatives, and continued the vigorous public debate. NAGA does not allege or contend, nor can it, that the Commanders Defendants leaked the text and they cannot be held liable for any purported harm caused by its republication.

6

to determine that NAGA has utterly failed to satisfy its pleading burden and to dismiss NAGA's claim with prejudice.

Nevertheless, NAGA's Opposition does nothing to survive dismissal. NAGA's reliance on the word "fake" to formulate an offense is fatally flawed no matter how NAGA frames it. First, NAGA glaringly fails to address any of the long list of cases that hold that the word "fake" is non-actionable opinion, and hyperbolic, imaginative and otherwise protected colorful speech. *See* Dkt. 32 pp. 27-28 (cases cited). Revealingly, NAGA cites no authority to the contrary. For this separate reason alone, NAGA cannot survive the Commanders Defendants' motion to dismiss.

Next, NAGA's attempt to impermissibly isolate one out-of-context sentence from Laux and King's multiple text exchanges to create its defamation claim misses the point and fails in light of First Amendment law. That NAGA bases its purported claim on an inherently vague, imprecise and non-fact asserting word, *i.e.*, "fake," renders it barred no matter how many disparate alleged facts NAGA tries to connect and the implications it tries to draw from them.[5] No amount of line drawing and parsing of Laux's statement can substitute for plausibly pled facts that show Laux's text could reasonably be read as stating objective fact, especially when read in the context of the fuller exchange between Laux and King against the backdrop of a very public national debate which NAGA ignores altogether. Dkt. 32 pp. 18-21.

The full exchange of Laux's texts with Christina King, Laux's knowledge of the content of NAGA's petition, and the contextual backdrop of the national public debate about the Club's name all belie NAGA's contention that Laux's text implied undisclosed facts. Laux's expression of his subjective view in these circumstances is protected opinion. No reasonable reader could

---

[5] NAGA's reliance on *Nunes v. Lizza*, 12 F.4th 890 (8th Cir. 2021), to claim that a reader can "connect the dots" to find defamation by implication is entirely misplaced. Contrary to NAGA's incomplete recitation, the Court in *Nunes* actually stated that implication may constitute defamation "unless it qualifies as an 'opinion'." *Id.* at 896 (citations omitted).

interpret it as a statement of fact or anything but an opinion or a hyperbolic expression. It can and should be dismissed under Rule 12(b)(6). Dkt. 32, pp 18-21. *See Shipyard Brewing Co., LLC v. Logboat Brewing Co., LLC*, No. 2:17-CV-04079-NKL, 2017 WL 6733971, at *3-5 (W.D. Mo. Dec. 29, 2017) (imprecise descriptions and subjective assessments cannot be proven as objective fact even if they carry negative connotations and argument of undisclosed facts "not persuasive" with "general insults".)

Additionally, NAGA's lack of any substantive response to the Commanders Defendants' actual malice argument effectively concedes that the argument is well grounded and is equally fatal to its defamation claim. NAGA's limited public figure status is uncontestable. Dkt. 32 pp. 28-31, and *see* supra pp. 4-5. The status of other participants in the public debate, which NAGA voluntarily and actively thrust itself into, is wholly irrelevant. NAGA's conclusory allegations are insufficient to meet its burden to plausibly plead sufficient facts provable by clear and convincing evidence that Laux or the Club knew the statement was false. *Nunes v. Lizza*, 12 F.4th 890, 895 (8th Cir. 2021) (affirming District Court's dismissal of defamation claim: "Because [plaintiff] is a public figure, the Supreme Court's jurisprudence on the First Amendment also requires him to prove by clear and convincing evidence that the defamatory statement is false and was made with actual malice."). The First Amendment directs that where NAGA has not plausibly plead the requisite actual malice, its purported defamation claim cannot stand for this separate and independent reason. Dkt. 32 pp. 28-31.

**B.     The Court Must Dismiss Count II and Count III Because Plaintiff Dismissed Defendant NCAI from the Lawsuit.**

In NAGA's Opposition, Plaintiff has asserted no response whatsoever to Defendants' motion to dismiss the conspiracy counts of its Complaint and, therefore, has waived its purported claims against the Commanders Defendants for civil conspiracy (Count II) and conspiracy to

violate civil rights (Count III). *See Rivera*, 993 F.3d at 1051; *see also McCampbell by & through Hidani v. McCampbell,* No. CV 18-1543 (DWF/TNL), 2020 WL 2307622, at *7 n.25 (D. Minn. May 8, 2020) ("Plaintiff's opposition to Defendants' Motion does not address Counts I and II . . . . Accordingly, those claims are waived.") (citing *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 770-71 (8th Cir. 2014)).

Even if NAGA had not waived Counts II and III by failing to address them in its Opposition (which it did), each claim nonetheless fails as a matter of law for the reasons articulated in Defendants' Motion, and because by voluntarily dismissing Defendant NCAI from this case, no viable conspiracy claim remains as a matter of law. Counts II and III purport to allege conspiracies between the Commanders, Harris, and NCAI. However, on January 3, 2024, Plaintiff voluntarily dismissed with prejudice Defendant NCAI from this case.[6] Dkt. 38. Thus, at most, Plaintiff now purports to allege a conspiracy between the Commanders and Josh Harris, *i.e.*, a company and the company's Managing Partner. Dkt. 1 ¶¶ 104-111. As the Eighth Circuit Court of Appeals and several other federal courts have held, under the intracorporate conspiracy doctrine, "a corporation and its agents are a single person in the eyes of the law, and a corporation cannot conspire with itself." *Torres v. City of St. Louis*, 39 F.4th 494, 506 (8th Cir. 2022) (citing *L.L. Nelson Enters. v. Cnty. of St. Louis*, 673 F.3d 799, 812 (8th Cir. 2012)). Accordingly, because the Commanders and Harris cannot, as a matter of law, conspire with each other, both conspiracy claims must fail for this additional independent reason from those set forth in the Commanders Defendants' Motion.

---

[6] Underscoring that there was no conspiracy, Plaintiff's counsel was reported as stating that "NAGA recently learned that NCAI was not involved, in any way, in the Washington Commanders defamation campaign against NAGA." https://www.law360.com/articles/1787817/native-group-urges-court-to-keep-nfl-conspiracy-bid-in-play.

9

## CONCLUSION

Defendants, the Club and Harris, respectfully request that the Court dismiss the Complaint against them for lack of personal jurisdiction, or, alternatively, for failure to state a claim on which relief can be granted, with prejudice, on all counts and award them their attorneys' fees and costs.

Dated: February 2, 2024

Respectfully submitted,

By their attorneys,

*/s/ Henry A. Sullivan*
Henry A. Sullivan, Esq.
Alain P. Mathieu, Esq.
Laura E. Martin, Esq.
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
Tel. (617) 542-6000
Fax (617) 542-2241
hasullivan@mintz.com
apmathieu@mintz.com
lemartin@mintz.com

*Attorneys for Defendants Washington Commanders and Josh Harris*

513992247v.1