# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | |
|---|---|
| Native American Guardian's Association, | ) |
| Plaintiff, | ) **ORDER GRANTING MOTIONS** |
| vs. | ) Case No. 3:23-cv-186 |
| Washington Commanders, et al, | ) |
| Defendants. | ) |

Defendants Josh Harris and the Washington Commanders (together, the "Commanders") move to dismiss the Plaintiff Native American Guardian's Association's ("NAGA") complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 31. Defendant Matthew Laux also moves to dismiss on similar grounds. Doc. 28. For the reasons below, the motions to dismiss for lack of personal jurisdiction are granted.

## I.  FACTUAL BACKGROUND

NAGA filed this action alleging defamation by Laux and the Commanders. Doc. 1. The complaint also alleges civil conspiracy and conspiracy to violate civil rights against Harris, the Commanders, and the National Congress of American Indians ("NCAI"). Id. The NCAI was later voluntarily dismissed. Doc. 41.

NAGA is a Virginia non-profit organization.[1] Doc. 23-2. NAGA's stated goal is to "ensure that Native American's rich history remain alive in the hearts and minds of all Americans." Doc. 1 at 2. NAGA's president resides in Devil's Lake, North Dakota, and it claims North Dakota is its principal place of business. Doc. 23-2 at 3.

---

[1] The complaint alleges NAGA is a North Dakota corporation (Doc. 1 at 11), but NAGA is incorporated in Virginia. Doc. 23-2.

1

The Commanders are a professional football team and are a member of the National Football League ("NFL"). Doc. 34 at 2. The entity that owns the Commanders is Pro-Football LLC. Doc. 33 at 2. Pro-Football is a Maryland limited liability corporation with a principal place of business in Virginia. Id. Josh Harris is part of Pro-Football and is the managing partner of the team. Doc. 34 at 1. He lives in Florida and has no contacts with North Dakota. Doc. 34 at 1-3. Matthew Laux is an employee of the Commanders. Doc. 30 at 2. Laux lives in Maryland. Id. at 1. Laux has no contacts with North Dakota (id. at 1-2) except that he recalls traveling to North Dakota once for a wrestling tournament when he was in high school. Id. at 1.

Following a long public debate, the Washington Redskins changed the name of their football team to the Washington Commanders.[2] NAGA publicly advocated against the name change because it believes the prior name honors Native American culture. Doc. 1 at 2-3. In 2023, NAGA encouraged individuals to sign a petition demanding the Commanders change their name back to the Washington Redskins. Id.

After the name change, Christina King, a former luxury box ticket owner, boycotted the team and stopped purchasing a luxury box for the Commanders home football games. Doc. 1 at 10. In 2023, Laux reached out to King about purchasing a luxury box again. Id. King refused and brought the NAGA petition to Laux's attention. Id. at 11. In response, NAGA alleges Laux called the organization a "fake group." Doc. 1 at 4. Eventually, Fox News reported the conversation. Id. at 11. That alleged statement is the basis for the defamation claim.

As to civil conspiracy, NAGA alleges the Commanders entered into an agreement to further defame NAGA when Harris contacted NCAI and directed them to issue a false press release

---

[2] The team stopped using the name Redskins in 2020 and was known as the Washington Football Team until adopting the Commanders name in 2022. Doc. 33 at 2.

concerning the ongoing debate about the name of the football team. Id. at 13. And as to the alleged conspiracy to violate civil rights, NAGA alleges the Commanders "conspired to deprive NAGA and its members of the privileges and immunities derived from their national origin, as Native Americans, by working together to silence NAGA entirely." Id. at 18-19.

## II.  LAW AND ANALYSIS

Laux and the Commanders move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). A plaintiff must allege sufficient facts in the complaint supporting a reasonable inference that the Court can exercise personal jurisdiction over the defendant. Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010). When personal jurisdiction is challenged, the plaintiff "must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (cleaned up). A prima facie showing must be "tested" by "affidavits and exhibits supporting or opposing the motion." Id. at 592. The evidence must be viewed in the light most favorable to the plaintiff, with all factual conflicts in its favor. Id. Personal jurisdiction in a diversity case exists to the extent permitted by the long-arm statute of the state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). North Dakota's long-arm statute authorizes courts to exercise jurisdiction to the fullest extent allowed by the Due Process Clause. Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223.

When a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the question is whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006). "Due Process requires minimum contacts between [a] non-resident defendant and the forum state such

that maintenance of the suit does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). A non-resident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003).

Personal jurisdiction can be specific or general. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Miller v. Nippon Carbon Co., 528 F.3d 1087, 1091 (8th Cir. 2008) (cleaned up). NAGA has not advanced an argument that North Dakota has general jurisdiction (Doc. 42), so the issue is whether it can establish specific jurisdiction.

### A. Specific Jurisdiction

A five-factor test is used for measuring minimum contacts in assessing personal jurisdiction over a defendant:

> (1) the nature and quality of a defendants' contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Dever v. Hentzen Coatings, Inc., 380 F.3d 1073-74 (8th Cir. 2004). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algoddoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). However, "significant weight" is given to the first three factors. Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004).

### 1.  Nature and Quality of Contacts

In examining the nature and quality of the contacts, the primary issue is whether the non-resident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir. 1992). Here, Laux, Harris, and the Commanders have essentially no contact with North Dakota. They do not reside, work, or transact any business in North Dakota, and they have never traveled to North Dakota during the time at issue in this case. As to Laux, it is difficult to comprehend how he could have fair warning that he would be subject to North Dakota jurisdiction when he made a statement in Maryland, to a woman in the Washington D.C. area,[3] about a group that was incorporated in Virginia, concerning the name of a football team that plays games in Washington D.C. The same is true for the Commanders.

For the Court to have specific jurisdiction, the connection(s) to North Dakota must be "deliberate" and "substantial." Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 594 (8th Cir. 2011). While it is alleged that the president of NAGA resides in North Dakota and the organization may have a principal place of business in North Dakota, any contact Laux and the Commanders had with North Dakota, at best, was incidental. See e.g., id. (incidental contact such as an email, phone call, and wire transfer was not enough to trigger personal jurisdiction). On this record, there is nothing to indicate that Laux or the Commanders had "fair warning" that their activities may subject them to the jurisdiction of North Dakota. So, the first factor weighs against exercising personal jurisdiction over the Defendants.

---

[3] Ms. King's exact location is not known, but she was likely in the Washington D.C. area (Doc. 30 at 2), and there is no allegation she was in North Dakota.

### 2. Quantity of the Contacts

The second factor looks at the quantity of the contacts. Specific jurisdiction may arise from a single contact with the forum state. Fulton v. Chicago, Rock Island & P.R. Co., 481 F.2d 326, 334-36 (8th Cir. 1973). That happens when the extraterritorial defendant is aware that an action will occur in a certain jurisdiction. Id. at 335. But that is not the case here. Laux and the Commanders are each alleged to have one incidental contact with North Dakota through actions that were not directed at the state. There is nothing in the record to suggest that any of the Defendants had knowledge that their actions would potentially have an effect in North Dakota. See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) (contacts with a state must be the defendant's intent and not random or isolated.). The second factor also weighs against exercising personal jurisdiction over the Defendants.

### 3. Relation of Contacts to the Cause of Action

The third factor looks at the relation of the contacts to the cause of action. Here courts must consider whether a claim arises out of or in relation to the defendant's contacts. See Kaliannan v. Hoong Liang, 2 F.4th 727, 733 (8th Cir. 2021); see also Bros. & Sisters in Christ, LLC v. Zazzle, Inc., 42 F.4th 948, 952 (8th Cir. 2022). The only contacts to North Dakota are that Laux once visited North Dakota for a wrestling tournament (while in high school) and that the Commanders occasionally scout football players in North Dakota and sell tickets to North Dakota residents. None of the claims in this case are alleged to have occurred in North Dakota, and the claims do not arise from the Defendants' alleged contact with North Dakota. So, the third factor also weighs against exercising personal jurisdiction over the Defendants.

### 4. The Interest of North Dakota in Providing a Forum

As noted above, in the Eighth Circuit, the first three factors are of "primary importance" in determining personal jurisdiction, and the last two factors are of "secondary importance." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003). The fourth factor considers the interest of the forum state in providing a forum for its residents. Dever, 380 F.3d at 1073-74. Even taking NAGA as a citizen of North Dakota (though it is a Virginia company), North Dakota has no interest in adjudicating this dispute. The facts at issue involve a football team from Washington D.C., a statement made in Maryland, and an alleged conspiracy between an owner of the football team and a non-profit group that is a citizen of Oklahoma. North Dakota's interest in providing a forum is minimum at best. See Nuevos Destinos, LLC v. Peck, 2020 WL 6318219, at *9 (D.N.D. Mar. 10, 2020) (finding "North Dakota had no conceivable interest" in adjudicating a dispute based on actions that occurred outside North Dakota that were not specifically directed at North Dakota, even if the plaintiff was a corporate citizen of North Dakota).

### 5. The Convenience of the Parties

The final factor considers the convenience of the parties. See Johnson, 444 F.3d at 956. But this factor too weighs against exercising personal jurisdiction over the Defendants. The individuals and organizations involved in the alleged defamation and conspiracies are not located in North Dakota. The actions alleged in the complaint occurred entirely outside of North Dakota. All witnesses would need to travel to North Dakota from other states. North Dakota is an inconvenient forum for all of the parties and weighs against exercising personal jurisdiction over the Defendants. Individually and collectively, on the facts of this case, all five factors weigh against exercising personal jurisdiction over the remaining Defendants.

### B. <u>Calder</u> Effects Test

The same result is warranted under the <u>Calder</u> effects test. <u>See</u> <u>Calder v. Jones</u>, 465 U.S. 783 (1984). To meet this test, NAGA must show that the brunt of the injury would be felt in North Dakota and that the Defendants intentionally targeted this state. <u>Steinbuch</u>, 518 F.3d at 586; <u>Johnson v. Arden</u>, 614 F.3d 785, 796 (8th Cir. 2010). The <u>Calder</u> effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." <u>Dakota Indus., Inc. v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1390-91 (8th Cir. 1991) (cleaned up).

Here, there is no indication that the alleged defamatory statement or the alleged conspiracies were directed at North Dakota or intended to cause an injury that would be felt in North Dakota. Simply put, there are no contacts with North Dakota alleged in the complaint or affidavits that are sufficient to exercise personal jurisdiction over the remaining Defendants.

### III. CONCLUSION

The Court has carefully considered the entire record, the parties' briefs, and the relevant case law. Because there is no basis for this Court to exercise personal jurisdiction over the Defendants, Laux's motion to dismiss for lack of personal jurisdiction (Doc. 28) and the Commanders' motion to dismiss for lack of personal jurisdiction (Doc. 31) are **GRANTED**. Given that, the Court need not address the plausibility of NAGA's claims.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 2nd day of April, 2024.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court